NO.7986.

# 7986

STATE OF LOUISIANA

JEAN ODOBERTO

COURT OF APPEAL

VS

U. J. VIRGIN.

PARISH OF ORLEANS.

# 7986

St. Paul, Judge.

On September 12th, 1921 plaintiff borrowed on
mortgage from Miss Katie Rehm, the sister-in-law of
defendant, the sum of $750 for one year at 7% interest.
For six years thereafter she made no demand whatever
either for the capital or for the interest; but just
as the note was about to prescribe she suddenly foreclosed
upon it, and plaintiff was obliged to pay her in full
the ~~amount~~ principal and all accrued interest, together
with attorney's fees and costs, the whole amounting to
$1183.55.

Plaintiff here alleges (in substance) that up to the
moment of said foreclosure, he believed that said note and
mortgage had been extinguished in accordance with an
agreement entered into between himself and this defendant,
by which the latter undertook to care for said note in
capital and interest out of the wages which plaintiff was
then earning in defendant's employ; but that defendant
although retaining said wages, had **failed** to apply an
part thereof whatever to the reduction of said note.
Wherefore plaintiff asks **judgment** for the amount of wages
earned, and also for the attorneys fees and costs which
he had to pay, said fees and costs amounting to $118.55.

I.

Defendant pleads the prescription of three years as if plaintiff were suing simply on an open account. But such is not the case here; on the contrary this action is essentially one for damages and founded on a breach of contract; to-wit, that defendant accepted from plaintiff a mandate to pay over certain monies for account of plaintiff, but failed to do so, whereby plaintiff suffered a loss which is measured in part by the amount of the open account.

But there is yet another reason why prescription cannot avail in this case, and it is this; that whenever one party has by his course of conduct lulled another into the belief that his rights will not be jeopardized by any inaction on his part, the former is thereafter estopped from taking any advantage from such inaction. Mc. Dyffy vs Walker, 125 La 152; Burdeau vs Dorsey, 7 Orleans App 354, 360. And since in this case defendant's agreement to pay the wages over to the holder of the note lulled plaintiff into the belief that his wages were in effect being paid regularly, and thus induced him to refrain from claiming them, it follows that defendant cannot now take advantage of his own failure in order to defeat plaintiff's claim; for prescription did not run as long as plaintiff was being thus misled.

434

Coming now to the main feature of this case we believe that all the circumstances thereof show that defendant did make some agreement to apply plaintiff's wages toward the extinguishment of his note. I. The very fact that defendant's sister-in-law did not ask even for her interest, and that plaintiff never did even as much as ask for his wages, is alone very significiant of some understanding of that sort. 2. Plaintiff testifies that before the year was up he went to defendant saying, "You owe me some money; I want to pay Miss Katie the interest on the mortgage"; to which defendant replied, "John, dont get uneasy; I'll fix everything up. Dont make any bad blood; I'll fix her up." And defendant admits, "I said that I ould see that she got her money."

### III.

For the rest we must hold strictly to the rule of law requiring that plaintiff make his case certain.

I. Defendant admits that plaintiff attended to his garden for several years before the storm of September 1915; and it is certain that plaintiff worked there in September 1912, when the mortgage was given. But the ### evidence as to whether plaintiff worked there after 1915 is ########### too entirely conflicting to stand as the basis of a judgment in favor of plaintiff, especially in the

435

face of an adverse finding by the trial judge.

2. Defendant admits that the rate of pay was $16 per month for the summer months (March to September) and $8 per month for the five winter months (October to February), making $152 per year.

3. Defendant admits that he owes plaintiff $15 for cutting the grass in June 1916; and does not seriously deny that he also owes $52 for 26 loads of earth at $2 per load delivered in 1916.

4. Defendant claims that in April 1913 he settled in full with plaintiff to May 1st 1913; and supports this by a check given to defendant, which reads that way. We accept this as a fact; for the genuineness of the statement on the check is not denied, and if genuine it is more reliebale than the memory of witnesses.

### IV.

Accordingly we find that plaintiff earned wages amounting to $451, asofollows;

1. May 1913 to September 1913............$ 80.

2. October 1913 to September 1914....... 152.

3. October 1914 to September 1915....... 152.

4. June 1916, $15 plus $52 ............. 67.

We therefore think that plaintiff should recover these $451. We further think that he i⁣⁣  ⁣  ⁣ ⁣ ⁣ ⁣ entitled to get back the attorneys fees and costs which he paid,

amounting to $118.55. For we are satisfied that they
would not have been incurred had defendant kept his
agreement; but at any rate both the interest and attorneys
fees would have been very much less, and any small differ-
ence will be more than compensated by the use which
defendant had of plaintiffs money without interest for
several years.

It is therefore ordered that the judgment appealed
from be amended by increasing the amount allowed plaintiff
to Five hundred and Sixty-nine Dollars and fifty-five
cents ($569.55) with legal interest from judicial demand
until paid; and as thus amended, said judgment is affirmed
at defendant's cost in both courts.